**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

YASSIN HAYTHAME MOHAMAD

    Plaintiff,

    v.

VINCENT MOONEY, et al.,

    Defendants.

CIVIL ACTION NO. 1:15-CV-00287

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before this Court are three motions to dismiss (*Docs*. 40, 42, 47) filed by the Defendants[1], a Motion for Default Judgment (*Doc*. 56) filed by Plaintiff Yassin Haythame Mohamad ("Plaintiff"), and a Motion for a Preliminary Injunction (*Doc.* 58) also filed by Plaintiff. The motions filed by Defendant Harrold and the Medical Staff Defendants will be granted because Plaintiff has failed to allege claims under either the First, Eighth or Fourteenth Amendment. The Commonwealth Defendant's Motion, however, will be granted in part and denied in part because Plaintiff has properly alleged claims under the First and Fourteenth Amendment related to the denial of religious meal accommodations. Additionally, Plaintiff's Motion for Default Judgment will be denied because the Commonwealth Defendants are actively involved in the present litigation, and Plaintiff's Motion for a Preliminary Injunction will be denied because he is unlikely to succeed on the merits of either of his remaining claims.

## **I. Background**

Yassin Haythame Mohamad is an inmate currently housed at the State Correctional

---

[1] Defendant Harrold filed one motion to dismiss. (*Doc*. 42.) Two other sets of Defendants also filed motions to dismiss: (1) Defendants Boguslaw, Davis and Miller (*Doc*. 40) (collectively "Medical Staff Defendants"); and (2) Defendants Wetzel, Mooney, Luscavage, Miller, Yackiel, Baumbach, Martino, Brumfield, Jellen, Wilson, and Duncan (*Doc*. 47) (collectively "Commonwealth Defendants").

Institution in Coal Township, Pennsylvania. On February 10, 2015, he filed a Complaint against fifteen (15) defendants[2] alleging violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution. (*Doc.* 1.)

More specifically, Plaintiff alleges that Defendants falsified documents in order to place him in the prison's Restricted Housing Unit ("RHU") in retaliation for grievances he filed against prison staff for "unprofessionalism." (*Doc.* 1, at ¶ 5.) While in the RHU, Plaintiff says he is subjected to: (1) bright 28-watt lights for 16 hours each day and unknown lighting conditions at night (*Doc.* 1, at ¶ 6); (2) one hour of yard time every weekday and no yard time on weekends or holidays (*Doc.* 1, at ¶ 1); (3) a ban on pornographic materials (*Doc.* 1, at ¶ 7); and (4) and heavily restricted access to the prison's law library (*Doc.* 1, at ¶ 8). Plaintiff also contends that he has received improper medical care in the RHU for his Deep Vein Thrombosis ("DVT"), anemia and extreme pain. (*Doc.* 1, at ¶ 3.) He also asserts that he has been taken off critical medication and has been denied access to a walker. (*Id*.) Finally, Plaintiff, a practicing Sunni Muslim, argues that he has been denied the resources necessary to properly observe his religion. He claims that Defendants have refused to provide him with necessary supplies and meals for Eid al-Adha and Eid al-Fitr, two prominent Islamic holidays, despite accommodating Jewish prisoners for their equivalent religious needs. (*Doc.* 1, at ¶ 18-19.)

Plaintiff alleges he exhausted all administrative remedies related to the facts outlined above.

On January 25, 2016 the Medical Staff Defendants filed a motion to dismiss. (*Doc.* 40.) Two other motions to dismiss were also filed: one by Defendant Harrold (*Doc.* 42) and one by the Commonwealth Defendants (Doc. 47.) These Motions are now ripe for review.

---

[2]   *See supra* note 1.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The court does not consider whether a plaintiff will ultimately prevail. Id. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Pleadings and other submissions by *pro se* litigants are subject to liberal construction. *See Baker v. Younkin*, 529 F. App'x 114, 115 (3d Cir. 2013). All well-pleaded factual allegations will be accepted as true and all reasonable inferences will be drawn in the plaintiff's favor. *Id.* Although allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a *pro se* complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations. *Id.* at 664. This means that there must be enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. A court need not assume that the plaintiff can prove facts that were not alleged in the complaint or credit a complaint's "bald assertions" or "legal conclusions." *See City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation and internal quotation marks omitted).

### III. Discussion

**A. Motion to Dismiss filed by Defendants Michael Mocklock, Nicholle Boguslaw, and Brian Davis**

Plaintiff contends that Defendants Michael Mocklock, Nicholle Boguslaw, and Brian Davis–the Medical Staff Defendants–violated his rights secured by the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiff claims that the Medical Staff Defendants: (1) failed to properly treat him for DVT, blood clots, and an injured leg; (2) conspired with the Commonwealth Defendants to routinely keep the lights on in his prison cell throughout the night; and (3) provided medical care in a racially discriminatory manner. The Medical Staff Defendants disagree and argue that Plaintiff has failed to allege claims under either cited Amendment. I agree; the harms alleged by Plaintiff do not amount to violations of either the Eighth or Fourteenth Amendment.

    (1)    <u>Failure to allege a violation of the Eighth Amendment</u>

        (a)    *Denial of medical care*

First, Plaintiff argues that his Eighth Amendment right to be free from cruel and unusual punishment was violated when the Medical Staff Defendants denied him adequate

4

medical care. While this may be true, Plaintiff has not adequately alleged such a claim.

The Eighth Amendment prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that "the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those who it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such a conclusion follows from the belief that the "denial of medical care may result in pain and suffering, which no one suggests would serve any penological purpose." *See Estelle*, 429 U.S. at 103. To state a claim under the Eighth Amendment for the denial of medical care a prisoner must establish "(1) that the defendants were deliberately indifferent[3] to [his] medical needs and (2) that those needs were serious." *Rouse*, 182 F.3d at 197.

Here, there is no dispute: Plaintiff has alleged that he was denied medical care. But Plaintiff has not adequately alleged that the Medical Staff Defendants were deliberately indifferent to his medical needs. Instead, Plaintiff has pled a legal conclusion: Defendants "ha[ve] failed to properly treat Plaintiff's DVT, blood clots, and damag[ed] right leg and acted together with deliberate indifference, medical malpractice [sic] to the health and safety of Plaintiff." (*Compl.*, at ¶ 13.) This is insufficient to sustain a claim under the Eighth Amendment. *See Iqbal*, 556 U.S. at 678.

---

[3] Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Additionally, Plaintiff's claim sounds in malpractice. In so far that Plaintiff has attempted to premise an Eighth Amendment violation on a theory of medical malpractice, an additional ground for dismissal exists. Plaintiff does not suggest that he has been completely denied medical care. Rather, Plaintiff explains that he believes he was denied "adequate" medical care. (*Compl.*, at ¶¶ 1-2.) It is well established that medical malpractice does not provide a basis for an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105. In the same vein, courts do not allow a plaintiff "to substitute his desires and opinions for the professional judgment of prison officials." *Iseley v. Dragovich*, 236 F. Supp. 2d 472, 478 (E.D. Pa. 2002). Moreover, the court, like a plaintiff, is barred from "substitut[ing] its own judgment for diagnosis and treatment decisions made by prison medical staff members." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Because Plaintiff's claim sounds in malpractice and does not properly allege an Eighth Amendment violation, his claim will be dismissed without prejudice. Plaintiff will be provided the opportunity to amend his Complaint to include facts to support his claim that the Medical Staff Defendants acted deliberately indifferent to his serious medical needs.

      (b)    *Conspiracy to violate the Eighth Amendment*

Next, Plaintiff claims that the Medical Staff conspired with the Commonwealth Defendants to cause harm in violation of the Eighth Amendment. To state a claim against the Medical Staff Defendants, Plaintiff must allege the Medical Staff Defendants engaged in a conspiracy with the purpose of depriving Plaintiff equal protection under the laws and that an act in furtherance of the conspiracy deprived him of some right or privilege afforded to citizens of the United States. *United Bdh of Carpenters and Joiners Local 610 v. Scott*, 463 U.S. 825, 827-28 (1983); *accord* 42 U.S.C. § 1985(3). Here, Plaintiff contends that the Medical Staff Defendants conspired with the Commonwealth Defendants to ensure Plaintiff's cell lights remained on for prolonged periods of time in violation of the Eighth

6

Amendment. Even if such a conspiracy existed, the use of constant lighting in the RHU does not contravene any right secured by the Eighth Amendment. Therefore, Plaintiff has failed to allege that he has been deprived a right "afforded to a citizen of the United States," and his claim will be dismissed. *Scott*, 463 U.S. at 828.

The Eighth Amendment requires the government provide humane condition of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832. "To succeed on an Eighth Amendment conditions of confinement claim, a plaintiff must prove that the deprivation was sufficiently serious (the objective element), and that the prison officials acted with a sufficiently culpable state of mind (the subjective element)." *Jones v. Sec'y Pa. Dep't of Corr.*, 589 Fed. App'x. 591, 592 (3d Cir. 2014) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). The objective element of this test is satisfied when an inmate is deprived of "the minimal civilized measure of life's necessities." This includes the "denial of basic human needs such as food, clothing, shelter, sanitation, medical care, and personal safety." *Griffin*, 112 F.3d at 709. With respect to the second element, "the plaintiff must prove that the prison official knew of and disregarded an excessive risk to the plaintiff's health or safety." *Jones*, 589 Fed. App'x at 592-93 (citing *Farmer*, 511 U.S. at 837).

Requiring inmates to live in constant illumination, under certain circumstances, may rise to the level of an Eighth Amendment violation. *See Bacon v. Minner*, 229 Fed. App'x 96, 100 (3d Cir. 2007) (citing Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996)). But a number of courts–including the Third Circuit–have explained that "constant low intensity lighting does *not* violate the Eighth Amendment." *Stewart v. Beard*, 417 Fed. App'x 117, 120 (3d Cir. 2011) (emphasis added); *Murray v. Keen*, No. 13-258, 2017 WL 3980776, at *4-5 (M.D. Pa. Sept. 11, 2017) (Brann, J.) (finding seven-watt nighttime security lighting did not violate the Eighth Amendment) *appeal filed*, No. 17-3117 (3d Cir. Sept. 25, 2017); *Spencer*

7

*v. Wetzel*, No. 12-616, 2014 WL 1056424, at *4-5 (M.D. Pa. Mar. 17, 2014) (Kosik, J.) (nine watt); *Brown v. Martinez*, No. 3-2392, 2007 WL 2225842, at *8 (M.D. Pa. July 31, 2007) (Vanaskie, J.) (fifteen watt).

Here, Plaintiff alleges that the Medical Staff Defendants entered into a conspiracy to "keep[] the lights and night lights on 24 hours a day to cause [him] harm." (*Compl.*, at ¶ 10.) While he notes that the lights were kept on "24 hours a day," Plaintiff also avers that there were two sets of lights: daytime lights and nighttime lights. (Compl., at ¶ 1.) Plaintiff alleges that daytime lighting was achieved through the use of a single 28-watt light. But Plaintiff is silent about the wattage of the nighttime lighting.[4] In other words, Plaintiff has not alleged that he is routinely subject to 28-watt lighting, which may raise an actionable Eighth Amendment claim. Instead, Plaintiff's Complaint–when liberally construed–suggests Plaintiff was regularly subject to 28-watt lighting during the day, and an unknown level of lighting at night. Plaintiff's claim can not proceed without additional facts regarding the intensity of nighttime lighting in his cell.

Because Plaintiff's conditions of confinement claim does not allege facts to support an Eighth Amendment violation, his claim will be dismissed without prejudice. Plaintiff will be provided the opportunity to amend his Complaint to include facts that suggest the Medical Staff Defendants engaged in a conspiracy and that he was regularly subjected to 28-watt lighting overnight.

(2)  Failure to allege a violation of the Fourteenth Amendment

Finally, Plaintiff alleges that the Medical Staff Defendants denied him medical

---

[4] Plaintiff does allege that the daytime, 28-watt light was "sometimes" used for 24 hours. Yet, Plaintiff fails to provide any specifics regarding the times the 28-watt lighting was used for extended periods of time. Even construing Plaintiff's current allegation liberally, I need not assume that the Plaintiff can prove facts that were not alleged in the complaint. *See City of Pittsburgh*, 147 F.3d at 263 n.13; *Morse*, 132 F.3d at 906.

8

treatment because of his race. But Plaintiff has failed to properly state this claim.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This Clause "embodies the general rule that all persons similarly situated should be treated alike." *Todd v. Kyler*, No. 5-1994, at *6 (M.D. Pa. Jan. 5, 2007) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). While prisoners' constitutional rights are limited following incarceration, prisoners remain "protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Brown v. Byrd*, No. 00-3118, 2000 WL 1780234, at *4 (E.D. Pa. Dec. 1, 2000) (citing *Waterman v. Farmer*, 183 F.3d 208, 212 (3d Cir. 1999)). Of course, despite the Clause's sweeping language, it does "not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Thus, to state a claim under 42 U.S.C. § 1983 premised on a violation of the Equal Protection Clause, an inmate must allege that he is a member of a protected class and that he was treated differently than similarly situated inmates. *See Rivera v. Chester Cnty*, No. 15-5609, 2017 WL 1150622, at *28 (E.D. Pa. Mar. 28, 2017) (O'Neill, J.) (citing *Cleburne*, 473 U.S. at 439). Here, Plaintiff relies on a single, broad statement to sustain his claim: "[The Medical Staff Defendants] blatantly subjected [me] to racially [sic] discrimination and denied medical care . . . ." (*Compl.*, at ¶ 9.) This averment is insufficient to sustain an Equal Protection claim; it does not suggest Plaintiff was subject to disparate treatment when compared to similarly situated inmates. Thus, Plaintiff's Equal Protection claim will be dismissed without prejudice.

In sum, Plaintiff has failed to properly allege that the Medical Staff Defendants

9

violated rights secured by either the Eighth or Fourteenth Amendment. Therefore, all claims raised in the Complaint against the Medical Staff Defendants will be dismissed with prejudice.

**B.     Motion to Dismiss filed by Defendant Jennifer Harrold**

Plaintiff argues that Defendant Harrold violated his rights secured under the Eighth and Fourteenth Amendments.

(1)     Failure to allege a violation of the Eighth Amendment

(a)     *Denial of Medical Care*

Plaintiff first alleges that Defendant Harrold, "refuses to give plaintiff proper mental treatment for his serious mental illness from the effect of his long term isolation . . . ." (*Doc.* 1, at ¶ 14.) As mentioned above, in order to establish a violation of the Eighth Amendment for the denial of medical care, a plaintiff must adequately allege that the defendant was deliberately indifferent to the plaintiff's medical needs. *See supra* § A(1)(a). While Plaintiff lists with some specificity the ways in which Defendant Harrold has allegedly violated the proper standard of medical care, these claims serve him better in a malpractice suit. *See Estelle*, 429 U.S. at 105. Therefore, this claim will be dismissed.

(b)     *Conspiracy to violate the Eighth Amendment*

Plaintiff next alleges that Defendant Harrold was a participant in a conspiracy that ensured Plaintiff's cell lights remained on for an extended period of time, thus causing him to suffer cruel and unusual punishment. The facts of this claim are identical to those made against the other members of the alleged conspiracy–namely the Medical Staff Defendants and Defendants Mooney, Miller, and Luscavage–and therefore Plaintiff's Eighth Amendment claims against Defendant Harrold will be dismissed for the same reasons without prejudice. *See supra* § A(1)(b).

(2) Failure to allege a violation of the Fourteenth Amendment

Plaintiff further argues that Defendant Harrold violated the Fourteenth Amendment's Equal Protection Clause by denying Plaintiff medical treatment because of his race. Plaintiff has failed to properly state this claim. The statement Plaintiff relies on to allege this action is the same as the one made against the Medical Staff Defendants. *See supra* § A(2). For the same reasons, Plaintiff's Fourteenth Amendment claim will be denied without prejudice.

## C. Motion to Dismiss filed by the Commonwealth Defendants

Plaintiff contends that the Commonwealth Defendants violated his rights secured by the First, Eighth, and Fourteenth Amendments to the United States Constitution.

(1) Failure to allege a violation of the Eighth Amendment

Plaintiff claims that the Commonwealth Defendants violated the Eighth Amendment when they failed to properly treat him for DVT, blood clots, and an injured leg and routinely subjected him to 24 hours of lighting in his cell. As stated above, such claims are not actionable as currently pled.[5] *See supra* § A(1). Therefore, I will dismiss the Eighth Amendment claims against the Commonwealth Defendants without prejudice.

(2) Failure to allege a violation of the Fourteenth Amendment

(a) *Denial of Eid Feasts*

Next, Plaintiff alleges that a set of the Commonwealth Defendants–Defendants Wetzel, Mooney, Luscavage, Miller, Baumbach, Brumfield, and Duncan–refused to provide him with special religious meals on the holy days of Eid al-Adha and Eid al-Fitr because he is a Sunni Muslim. Plaintiff believes that such a refusal violates the Fourteenth Amendment's Equal Protection Clause because Jewish prisoners had been provided

---

[5] Plaintiff did not plead unique facts for claims brought against the various Defendants. Instead, Plaintiff relied on an identical set of facts for all claims against all Defendants. Thus, my analysis above remains unchanged.

11

special meals on Jewish feast days. The Commonwealth Defendants have not responded to Plaintiff's assertion that the denial of an Eid feast constitutes an actionable violation under the Fourteenth Amendment.

As explained in greater detail above, to state a claim under 42 U.S.C. § 1983 premised on a violation of the Equal Protection Clause, an inmate must allege that he is a member of a protected class and that he was treated differently than similarly situated inmates. *See Rivera*, 2017 WL 1150622, at *28 (citing *Cleburne*, 473 U.S. at 439). Plaintiff alleges he is a member of a protected class; he is a Sunni Muslim. (*Compl*, at ¶ 18.) Additionally, Plaintiff alleges that he was treated different than similarly situated inmates. For example, he states that Jewish inmates in the RHU were given food-based accommodations on their religious feast days. Therefore, Plaintiff's claim that the denial of religious meals constitutes a Fourteenth Amendment violation will be allowed to proceed.

  (3) <u>Failure to allege a violation of the First Amendment</u>

    (a) *Denial of pornographic magazines*

Next, Plaintiff claims the Commonwealth Defendants violated the First Amendment through the implementation and enforcement of a policy that bans pornographic magazines from the prison. While the Commonwealth Defendants agree that this policy limits Plaintiff's rights under the First Amendment, they argue it is a reasonable, constitutional limit because it serves a legitimate penological objective. I agree.

"In the First Amendment context . . . a[n] inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977) ("The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in

12

incarceration."). The Supreme Court has explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Thus, if the restriction of pornographic magazines in the prison is reasonably related to a legitimate penological interest, Plaintiff's claim must not proceed.

The Supreme Court's decision in *Turner* instructs courts to "assess the overall reasonableness of such regulations by weighing four factors." *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999). "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational." *Id.* at 213 (citing *Turner* 482 U.S. at 89-90; *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). This factor "looms especially large" because it "tends to encompass the remaining factors, and some of its criteria are apparently necessary conditions." *Amatel v. Reno*, 156 F.3d 192, 196 (D.C. Cir. 1998). "Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right." *Waterman*, 183 F.3d at 213 (citing *Turner*, 482 U.S. at 90). Third, a court must account for the costs of accommodating the right would "impose on other inmates, guards, and prison resources generally." *Id.* "And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* (quotations omitted).

The Third Circuit has also made clear that the *Turner* analysis should be considered as a burden-shifting analysis. "First, the prison has the burden of demonstrating the first *Turner* factor. This burden is slight, and in certain instances, the connection may be a matter of common sense." *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012). "Second, if the prison meets its burden . . . then we consider the other *Turner* factors." *Id.* (citing *Wolf v. Ahscroft*, 297 F.3d 305, 308 (3d Cir. 2002). The inmate, not the prison, has the burden

13

of production and persuasion regarding the other *Turner* factors. *Id.* at 156-58; *see also Brooks v. Bledsoe*, No. 12-67, 2015 WL 5023724, at *11 (M.D. Pa. Aug. 24, 2015).

Here, the Commonwealth Defendants have satisfied their burden. They have asserted that the policy prohibiting pornographic materials is necessary to maintain prison security and to further rehabilitative goals. This explanation satisfies the slight burden presented by the first *Turner* factor. *See, e.g.*, *Waterman*, 183 F.3d at 213-14; *Ramirez v. Pugh*, 486 F. Supp. 2d 421, 437 (M.D. Pa 2007); *Jolly v. Snyder*, No. 00-41, 2003 WL 1697539, at *5 (D. Del. Mar. 22, 2003). Therefore, the burden shifts to the Plaintiff to show that the remaining *Turner* factors suggest the policy is unduly restrictive and unconstitutional.

Plaintiff has failed to satisfy his burden. In fact, Plaintiff has provided no allegation relevant to the *Turner* analysis and has failed to respond to the Commonwealth Defendants position that the policy at issue is reasonably related to a legitimate penological interest. Because Plaintiff has failed to present any allegation to support this claim, it will be dismissed without prejudice.

        (b)    *Denial of an Eid Feasts*

Plaintiff also argues that the Commonwealth Defendants–specifically Defendants Wetzel, Mooney, Luscavage, Miller, Brumfield, Duncan, and Baumach, prohibited him from practicing his religion–namely by refusing to serve Muslim inmates housed in the RHU Eid feast meals–in violation of the First Amendment's Free Exercise Clause. The Commonwealth Defendants have not addressed this claim.

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell*, 417 U.S. at 822)); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First

Amendment, . . . including its directive that no law shall prohibit the free exercise of religion."). Although inmates retain certain protections under the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, [which is] justified by considerations underlying our penal system." *O'Lone*, 482 U.S. at 348. To state a claim under the Free Exercise Clause an inmate must allege facts demonstrating that the "government has placed a substantial burden on the observation of a central religious belief or practice," and that no "compelling governmental interest justifies the burden." *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989); *see also DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) ("explaining that to sustain an action under the Free Exercise Clause a prisoner must allege a burden on beliefs that are "sincerely held, and religious in nature.")

As explained above, Plaintiff alleges that he was denied an Eid feast because he was being held in the RHU. While the contours of this religious practice remain unclear, I am required to liberally construe Plaintiff's Complaint. Through that lens, Plaintiff alleges that the Quaran requires a special feast-day meal on Eid al-Adha and Eid al-Fitr, two Muslim holy days, and that the above-referenced Commonwealth Defendants denied him those meals. The outright denial of such a meal presents a substantial burden to the observation of a allegedly central religious practice. As such, Plaintiff has identified a prison policy that impinges on a constitutional right.

Now, where a prison policy impinges on a prisoner's constitutional right, the policy may still be valid if it is "reasonably related to legitimate penological interest." The *Turner* burden-shifting framework is used to determine whether a prison policy is reasonably related to legitimate penological interests. Remember, the burden under this test is originally born by the Commonwealth Defendants. They must articulate "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify

15

it." And, they have not. The Commonwealth Defendants have not responded to Plaintiff's claim. Therefore, the Commonwealth Defendant's have failed to meet their burden, and Plaintiff's claim will not be dismissed at this time.[6]

    (3)    <u>Failure to allege a First Amendment retaliation claim</u>

Finally, Plaintiff claims he was subject to retaliation in response to the exercise of his First Amendment rights. Specifically, Plaintiff claims after filing grievances he was placed in the RHU and was denied assistance in the RHU's legal library.

A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action taken by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Mack v. Loretto*, 839 F.3d 286, 288 (3d Cir. 2016). Here, there is no question that Plaintiff has engaged in constitutionally protected activity, namely the filing of grievances against a number of Commonwealth Defendants.[7] *See id.* at 298 (explaining that an oral grievance raised by

---

[6]     The Commonwealth Defendants will be permitted to argue that the policy that denied Plaintiff an Eid feast serves legitimate penological interest upon motion for summary judgment. It is worth noting that while the Commonwealth Defendant's have not raised this issue, other courts have remarked that a "prison's interest in an efficient food system and in avoiding inmate jealousy are legitimate penological concerns under *Turner*." *DeHart v. Horn*, 227 F.3d 47, 53 (3d Cir. 2000). Moreover, because there is a well-settled, legitimate penological interest in an efficient food system, Plaintiff's Motion for a Preliminary Injunction will be denied.

[7]     The Commonwealth Defendants argue that since Plaintiff does not have a right to be housed elsewhere or a right to use the law library, Plaintiff "cannot establish he has engaged in protected activity." But the protected activity Plaintiff alleges is the filing of grievances related to the practices of the Commonwealth Defendants. As noted, such conduct is protected by the First Amendment. There is no need for the Plaintiff to establish an independent constitutional interest in either the assignment outside the RHU or to use of the law library. *See Allah*, 229 F.3d at 225 (citing *Pratt v.*

16

a prisoner may be constitutionally protected conduct). Further, an allegation that a prisoner was kept for many months "in disciplinary confinement would deter a reasonably firm prisoner from exercising his First Amendment rights." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *see also Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). Finally, Plaintiff's use of the word retaliation in his complaint "sufficiently implies a causal link between his complaints and the [adverse action taken] against him." *Mitchell*, 318 F.3d at 530. Therefore, it appears that Plaintiff has alleged a claim of First Amendment Retaliation.

Unfortunately, Plaintiff has not specified the Commonwealth Defendants who he claims retaliated against him. Instead, Plaintiff generally avers that he is being held "unlawfully . . . [in] retaliation for verbally complaining about *defendants* unprofessional conduct." (*Compl.*, at ¶ 5 (emphasis added).) To state a claim, Plaintiff must specifically allege the persons responsible. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (explaining that a civil rights complaint is adequate where it states the conduct, time, place, *and* persons responsible for the alleged harm). Stating, generally, that the "defendants" were responsible is insufficient. The Commonwealth Defendants cannot be expected to respond to this statement when they do not know which party allegedly engaged in retaliatory behavior. For this reason, Plaintiff's claim will be dismissed without prejudice.

### D. Plaintiff's Motions for Default Judgment

Finally, Plaintiff argues that I should enter a Default Judgment in his favor and against the Commonwealth Defendants because the Commonwealth Defendants did not file a brief in reply to his Brief in Opposition to Defendants' Motion to Dismiss. However, there is no basis to enter such a judgment.

Generally, Default Judgment is appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . ." FED. R. CIV. P.

---

*Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995)).

55(a). In the instant action, the Commonwealth Defendants entered an appearance and filed a motion to dismiss. In accord with the Local Rules, the Commonwealth Defendants also filed a brief in support of their motion. *See* M.D. Pa. L.R. 7.5 ("[T]he party filing the motion *shall* file a brief in support of the motion. . . ." (emphasis added)). Thus, the Commonwealth Defendants complied with the rules governing the filing of a dispositive motion. Contrary to Plaintiff's position, the Commonwealth Defendants are not required to file a brief in reply; such briefing is permissive. *See* M.D. Pa. L.R. 7.7 (Dec. 1, 2009) ("A brief in reply *may* be filed by the moving party. . . ." (emphasis added)).

Because the Commonwealth Defendants have actively defended against Plaintiff's claims, and they followed all rules related to the filing of a dispositive motion, Plaintiff's Motion for Default Judgment will be denied.

### IV. Conclusion

For the above stated reasons, the motions to dismiss filed by the Medical Staff Defendants and Defendant Harrold will be granted in their entirety, and Plaintiff's claims dismissed without prejudice. The motion to dismiss filed by the Commonwealth Defendants will be granted in part and denied in part. Plaintiff will be allowed to proceed on his First Amendment Free Exercise and Fourteenth Amendment Equal Protection claims against Defendants Wetzel, Mooney, Luscavage, Miller, Baumbach, Brumfield, and Duncan for the denial of religious meals in the RHU. But, in all other respects, the Commonwealth Defendants' Motion to Dismiss will be granted and the remaining claims dismissed without prejudice.

An appropriate order follows.

| | |
|---|---|
| August 9, 2018 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |

United States District Judge

19